**KALIEL GOLD PLLC**
Jeffrey D. Kaliel (SBN 238293)
Sophia G. Gold (SBN 307971)
1100 15th Street NW, 4th Floor
Washington, D.C, 20005
Telephone: (202) 350-4783
Facsimile: (202) 871-8180
Emails: jkaliel@kalielpllc.com
          sgold@kalielgold.com

**THE KICK LAW FIRM, APC**
Taras Kick (SBN 143379)
Jeffrey C. Bils (SBN 301629)
815 Moraga Drive
Los Angeles, CA 90049
Telephone: (310) 395-2988
Facsimile: (310) 395-2088
Emails: Taras@kicklawfirm.com
          Jeff@kicklawfirm.com

*Attorneys for Plaintiff and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **BROOKE MILLER**, individually, and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>       v.<br><br>**AFTERPAY US**,<br><br>                    Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.    This lawsuit is brought as a class action on behalf of Plaintiff and thousands of similarly situated Afterpay customers who have been deceived into using Afterpay's buy now, pay later service by the company's misrepresentations and omissions, in marketing materials, regarding the true operation and risks of the service. These risks include the real and repeated

risk of multiple insufficient funds fees ("NSF fees") or overdraft fees imposed by users' banks as a result of automated Afterpay transfers from consumers' checking accounts.

2. As Afterpay has explosively grown in popularity in the U.S., it has concealed a hidden scourge: hundreds of thousands of overdraft and NSF Fees its already-struggling users have to pay for using the service.

3. Afterpay specifically targets young and poor consumers and those struggling to make ends meet on a week-to-week basis. This group is its core constituency.

4. To that group, Afterpay purports to offer a solution to cash-strapped consumers: Afterpay prominently markets itself as a service that allows users to pay for purchases at a later date, with no interest, no fees and no hassle. These representations are false. In fact, there are huge, undisclosed fees and interest associated with using the service.

5. Afterpay's services thus cause unsuspecting consumers like Plaintiff to incur significant overdraft and NSF fees on their linked bank accounts.

6. Unfortunately, Afterpay's operation, along with its deceptive and incomplete marketing materials, means that users like Plaintiff end up paying huge amounts of fees and interest, which Afterpay falsely assures users they will <u>not</u> receive.

7. In its rush to tout itself as convenient, simple, automatic, and free, Afterpay does not disclose that overdraft and NSF fees are a likely and devastating consequence of the use of its service. No reasonable consumer would run this risk.

8. This massive risk is known to Afterpay but is omitted from all of its marketing.

9. Had Plaintiff and the Class members known of the true operation and risks of the Afterpay service, they would not used the Afterpay service.

10. Plaintiff and the Class members have been injured by Afterpay's practices. Plaintiff brings this action on behalf of themselves, the putative Class, and the general public. Plaintiff seeks actual damages, punitive damages, restitution, and an injunction on behalf of the general public to prevent Afterpay from continuing to engage in its illegal practices as described herein.

///

# PARTIES

11. Plaintiff Brooke Miller is a citizen and resident of Springfield, Missouri.

12. Defendant Afterpay US is a California corporation with its principal place of business in San Francisco, CA.

# JURISDICTION AND VENUE

13. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class is a citizen of a different State than Defendant. The number of members of the proposed Classes in aggregate exceeds 100 users. 28 U.S.C. § 1332(d)(5)(B).

14. This Court has personal jurisdiction over the Defendant because it regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

# FACTUAL ALLEGATIONS

**A.  Overview**

16. Founded in Australia in 2016, Afterpay has expanded to become one of the largest buy now, pay later services in the U.S.

17. The concept of "buy now, pay later" has existed since the birth of credit cards. Afterpay has expanded this concept to offer point-of-sale loans for online and in-store purchases through its mobile app, allowing users to avoid paying in full for products at hundreds of online and in-person stores by breaking up payments into four installments—allowing users to pay off a purchase over the next six weeks.

18. According to the Afterpay website and marketing materials, the service is completely free, with no interest or hidden fees.

19. Here's how it works.  At checkout at an in-person store, or online, a user is offered a Afterpay loan as an alternative to other, traditional methods of payment.  During that checkout experience, Afterpay offers short marketing messages regarding its supposedly fee-free service.

20. If a user chooses to use Afterpay, she provides basic personal details like name, date of birth and address, debit card.  She then is provided specific payment plan details.

21. For example, if the total purchase is $50, Afterpay breaks that total into four payments of $12.50, with the first installment due at checkout and the remaining three deducted over the next six weeks.  The user's debit card will be charged for the first payment and automatically charged for the remaining three payments until the balance is paid in full.

22. The whole process takes a few seconds—and at no time during that process does Afterpay warn potential users of the true risks of using its service. To the contrary, during the checkout and sign up processes, Afterpay repeatedly touts itself as a free service—without "surprises."

23. Afterpay's marketing and public communications stress that it is a service that allows users to avoid overdraft fees, interest and other predatory charges.

24. Its marketing, website, and app promises:

**Shop online and in stores. Pay over 6 weeks interest free.**

**Afterpay. It's the better way to pay.**

**Signing up is simple.**

No long applications or complicated terms & conditions. Have your email, phone number, address, DOB, and debit/credit card handy—that's it.

**Get what you need right now.**

Make your first payment today and the rest over 6 weeks. It really is that simple.

**Manage with smart limits.**

Check your available spend and stay within budget. And spend wisely with limits that gradually increase with on-time payments.

**We've got your back.**

We'll send reminders, so you never miss a payment. And if you do, we pause your account until you're back on track. There are no fees when you pay on time. And late fees are capped at 25% of the purchase price.

25. Similarly, the Afterpay interface promises:

# We´ve pioneered a better way to pay.

No external credit checks, no interest, no fees when you pay on time, no surprises—and our customers love us for it.

26. But there is a "surprise." A big one. There can also be huge amounts of "interest" and "fees," albeit not assessed by Afterpay, in the form of overdraft fees assessed by banks.

27. Overdraft fees, which banks charge when they pay small-dollar purchases into an insufficient account balance, are a highly profitable part of the banking sector that exclusively targets the very poor. According to a 2017 study by the Consumer Financial Protection Bureau, 5 percent of all bank accounts have over 20 overdrafts a year, which produce 63.3 percent of all overdraft fees paid by consumers. Another 4.2 percent of bank accounts have over ten overdrafts a year and make up more than 15 percent of fees paid by consumers.

28. This is the same group of consumers that Afterpay targets with its marketing: consumers living paycheck to paycheck. As a result, Afterpay knew or should have know that such users were at extreme risk of overdraft fees when using the Afterpay service.

29. When a bank pays an overdraft, it makes a loan to its accountholder in the amount of the overdraft. The overdraft fee is a payment the accountholder makes for the extension of credit for the overdrawn amount.

30. A 2008 Federal Deposit Insurance Corporation (FDIC) study showed that overdraft fees carry an effective APR in excess of 3,500 percent.

31. In short, the entire premise of Afterpay is to provide immediate access to goods and services and avoid bank fees and interest charges. That is why consumers are shocked to discover that Afterpay causes significant bank fees and interest charges.

32. Using Afterpay's services causes unsuspecting consumers like Plaintiff to incur massive fees on their linked bank accounts.

33. Afterpay misrepresents (and omits facts about) the true nature, benefits, and risks of its service, functioning of which means that users are at extreme and undisclosed risk of expensive bank fees when using Afterpay. Had Plaintiff been adequately informed of these risks, she would not have used Afterpay.

34. As alleged herein, Plaintiff had no idea that small, automatic Afterpay repayments could cause $35-each in overdraft fees from her bank.

B.   **Plaintiff's Experience**

35. When Plaintiff signed up for Afterpay and were induced to provide Afterpay with their highly sensitive banking information, she was not aware that Afterpay's service had a significant "surprise" and that significant "interest" and "fees" could result.

36. For example, in November, 2020, Plaintiff made a purchase using Afterpay.

37. On December 14, 2020, Afterpay made a deduction from her checking account at Central Bank of the Ozarks in the amount of $15.47, as a partial repayment of that purchase. That deduction caused a $35 OD Fee at Central Bank of the Ozarks.

C.   **Afterpay's Deceptive Marketing**

38. In marketing and promotions, Afterpay describes its service as simple, convenient, and easy—a no-fee, no-interest way for consumers to receive their purchases before they have money to pay for them.

39. Afterpay's marketing never warns consumers of the extreme and crushing NSF and overdraft fee risk of using the service.

40. Afterpay conceals from users the punishing risk of NSF and overdraft fees on small dollar Afterpay repayments.

41. Afterpay's marketing materials—including within the app, in app stores, and on Afterpay's website—never disclose these risks and material facts, instead luring consumers to sign up for and use the service with promises of ease, convenience, and fee/interest avoidance.

42. Afterpay knows that its service is likely to cause its low-income users to incur large bank fees.

43. Afterpay's representations—which all users view during the sign-up process—are false and contain material omissions.

44. Afterpay misrepresents the true nature, benefits and risks of the service, which targets users with an extreme and undisclosed risk of Afterpay triggering expensive, earnings-depleting bank fees. Plaintiff would not have used Afterpay if she had been adequately informed of the risks of bank fees. As alleged herein, Plaintiff had no idea small, automatic Afterpay repayments could cause $35 bank fees from their bank; she had no idea Afterpay would process transactions when their accounts had insufficient funds.

45. Afterpay's marketing never discloses the most devastating risk of using the service—that days of earnings can be wiped out by bank fees associated with using the service.

46. Plaintiff would not have chosen to use the Afterpay service if she had been informed of the true risks associated with it.

## CLASS ALLEGATIONS

47. Plaintiff bring this action individually and as representatives of all those similarly situated, on behalf of the below-defined Class (the "Class"):

> All persons who used the Afterpay Service and incurred an overdraft or NSF Fee as a result of a Afterpay repayment deduction.

48. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staffs.

49. This case is appropriate for class treatment because Plaintiff can prove the elements of her claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

50. **Numerosity:** The members of the Class are so numerous that joinder of all members would be unfeasible and impracticable. The precise membership of the Class is unknown to Plaintiff at this time; however, it is estimated that the Class number is greater than one hundred individuals. The identity of such membership is readily ascertainable via inspection of Defendant's books and records or other approved methods. Class members may be notified of the pendency of this action by mail, email, internet postings, and/or publication.

51. **Common Questions of Law or Fact:** There are common questions of law and fact as to Plaintiff and all other similarly situated persons, which predominate over questions affecting only individual Class members, including, without limitation:

   a) Whether Afterpay's representations and omissions about its service are false, misleading, deceptive, or likely to deceive;

   b) Whether Afterpay failed to disclose the NSF and overdraft fee risks of using its service;

   c) Whether Plaintiff and the Class members were damaged by Afterpay's conduct;

   d) Whether Afterpay's actions or inactions violated the consumer protection statute invoked herein; and

   e) Whether Plaintiff are entitled to a preliminary and permanent injunction enjoining Defendant's conduct.

52.     **Predominance of Common Questions:** Common questions of law and fact predominate over questions that affect only individual members of the Class. The common questions of law set forth above are numerous and substantial and stem from Afterpay's uniform practices applicable to each individual Class member. As such, these common questions predominate over individual questions concerning each Class member's showing as to his or her eligibility for recovery or as to the amount of his or her damages.

53.     **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, Plaintiff and all Class members were similarly injured through Afterpay's uniform misconduct as alleged above. As alleged herein, Plaintiff, like the members of the Class, were deprived of monies that rightfully belonged to them. Further, there are no defenses available to Afterpay that are unique to Plaintiff.

54.     **Adequacy of Representation:** Plaintiff is an adequate class representative because who is fully prepared to take all necessary steps to represent fairly and adequately the interests of the members of the Class, and because her interests do not conflict with the interests of the other Class members they seek to represent. Moreover, Plaintiff's attorneys are ready, willing, and able to fully and adequately represent Plaintiff and the members of the Class. Plaintiff's attorneys are experienced in complex class action litigation, and they will prosecute this action vigorously.

55.     **Superiority:** The nature of this action and the claims available to Plaintiff and members of the Class make the class action format a particularly efficient and appropriate procedure to redress the violations alleged herein. If each Class member were required to file an individual lawsuit, Afterpay would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Plaintiff with its vastly superior financial and legal resources. Moreover, the prosecution of separate actions by individual Class members, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual Class members against Afterpay, and which would establish potentially incompatible standards of conduct for Afterpay and/or

legal determinations with respect to individual Class members which would, as a practical matter, be dispositive of the interests of the other Class members not parties to adjudications or which would substantially impair or impede the ability of the Class members to protect their interests. Further, the claims of the individual members of the Class are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attending thereto.

**FIRST CAUSE OF ACTION**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf of Plaintiff and the Class)**

56. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

57. California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." Afterpay's conduct related to its misrepresentations and omissions about the true nature of using its "buy now, pay later" service violates the statute's "unfair" and "fraudulent" prongs.

58. The UCL imposes strict liability. Plaintiff need not prove that Afterpay intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

59. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

60. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

61. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

62. Afterpay committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.,* by affirmatively and knowingly misrepresenting on its website, app, and marketing materials that its service is a simple, convenient, and easy no-fee, no-interest way for consumers to receive their purchases before they have money to pay for them with "no surprises," but fails to warn consumers of the extreme and crushing NSF and overdraft fee risk of using the service.

63. Defendant's acts and practices offend an established public policy of promoting transparency in the marketplace regarding the real risks of utilizing financial services that have a high potential of incurring devastating banking fees, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

64. The harm to Plaintiff and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

65. Afterpay's business practices have misled Plaintiff and the proposed Class and will continue to mislead them in the future.

66. Plaintiff relied on Defendant's misrepresentations about the Afterpay service, believing it would be "simple" to use, with "no surprises," "no interest," and "no fees."

67. By falsely marketing its "buy now, pay later" service as such, Afterpay deceived Plaintiff and Class members into using the Afterpay service, only to find out that using Afterpay would trigger expensive, earnings-depleting bank fees.

68. Had Plaintiff known the truth about the Afterpay service, she would not have signed up for Afterpay.

69. As a direct and proximate result of Afterpay's unfair, fraudulent, and unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages in the form of overdraft and NSF fees. Defendant's fraudulent conduct is ongoing and presents a continuing threat to Class members in that they will continue to be deceived into signing up for

Afterpay under the false belief that it is a "free" service without any "surprises," when in reality, users are exposed to a heightened risk of incurring expensive bank fees when using Afterpay

70. As a result of its unfair, fraudulent, and unlawful conduct, Afterpay has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

71. Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its unfair, unlawful, and fraudulent practices.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

A. Certifying the proposed Classes pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiff as representative of the Classes, and appointing counsel for Plaintiff as lead counsel for the respective Classes;

B. Declaring that Afterpay's policies and practices as described herein constitute a breach of contract, a breach of the covenant of good faith and fair dealing or unjust enrichment, and/or a violation of the UCL;

C. Public injunctive relief enjoining Afterpay from the wrongful conduct as described herein;

D. Awarding restitution of all fees at issue paid to Afterpay by Plaintiff and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

E. Compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

F. Awarding actual and/or compensatory damages in an amount according to proof;

G. Punitive and exemplary damages;

H. Awarding pre-judgment interest at the maximum rate permitted by applicable law;

I. Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

J. Awarding such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: May 25, 2021             **KALIEL GOLD PLLC**

By: */s/ Jeffrey D. Kaliel*
Jeffrey D. Kaliel (SBN 238293)
Sophia Goren Gold (SBN 307971)
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
Facsimile: (202) 871-8180
jkaliel@kalielpllc.com
sgold@kalielgold.com

**THE KICK LAW FIRM, APC**
Taras Kick (SBN 143379)
Jeffrey C. Bils (SBN 301629)
815 Moraga Drive
Los Angeles, CA 90049
Telephone: (310) 395-2988
Facsimile: (310) 395-2088
Emails: Taras@kicklawfirm.com
            Jeff@kicklawfirm.com

*Attorneys for Plaintiff and the Proposed Class*